```
                  UNITED STATES DISTRICT COURT
                      DISTRICT OF NEVADA
                      LAS VEGAS, NEVADA




UNITED STATES OF AMERICA,    )
                             )  Case 2:11-CR-0430-PMP-GWF
          Plaintiff,         )
                             )
     vs.                     )
                             )
ANN HILTON,                  )
                             )
          Defendant.         )  Las Vegas, Nevada
                             )  March 18, 2013
_____)  9:30:22 a.m.
And related parties and cases)
```

**SENTENCING**

```
       THE HONORABLE PHILIP M. PRO PRESIDING
    DISTRICT JUDGE OF THE U.S. DISTRICT COURT
```




```
                COURT RECORDER:

                HENRY ENRIQUEZ,
                U.S. District Court
```




Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

APPEARANCES:

FOR THE PLAINTIFF:         DANIEL SCHIESS,
                           Assistant U.S. Attorney
                           333 Las Vegas Blvd South, Suite 5000
                           Las Vegas, Nevada 89101
                           dan.schiess@usdoj.gov


FOR THE DEFENDANT:         RICHARD F. BOULWARE,
                           Assistant Federal Public Defender
                           411 East Bonneville Street
                           Las Vegas, Nevada 89101
                           Richard_Boulware@fd.org


ALSO PRESENT:              KELLI MORGAN,
                           U.S. Department of Probation

```
 1  LAS VEGAS, NEVADA                        MONDAY, MARCH 18, 2013
 2                  PROCEEDINGS BEGAN AT 9:30:22 A.M.
 3                            * * * * *
 4           THE COURT:  ... everybody.  Good morning.
 5           All right, we're convened in United States of
 6  America versus Ann Hilton, also known as Ann Onion,
 7  Criminal-S-11-430.
 8           The record should reflect the presence of the
 9  defendant together with counsel, Richard Boulware and Dan
10  Schiess on behalf of Plaintiff, United States.  Kelli Morgan
11  on behalf of the Department of Probation.  And, Mr. Schiess,
12  with you have?
13           MR. SCHIESS:  Steven Konrad, the FBI case agent
14  who's been very helpful on this case, he's here to help me in
15  case I need it.
16           THE COURT:  All right.  Thanks very much.
17           Have a seat everyone.
18           Well, Ms. Hilton, the matter is before the Court as
19  I said for sentencing.  You appeared before me on November 9,
20  2012.  I should also note the presence of John O'Reilly.  Mr.
21  O'Reilly, are you appearing as counsel in the case?
22           MR. O'REILLY:  I am not, Your Honor.  I'm here as
23  a spectator and [unintelligible] court.  Thank you, Your
24  Honor.
25           THE COURT:  All right.  Marvelous.  Thank you.
```

1         MR. BOULWARE:  Your Honor, if I might interrupt the
2  Court, 'cause there's an issue that I would like to bring to
3  the Court's attention beforehand and I brought this up with
4  Mr. Schiess this morning.
5         Your Honor, I'm going to be requesting a
6  continuance in this case and I'll tell the Court why.  It's
7  our -- it's our belief, and Mr. Schiess may disagree with
8  this, I understand why, that there was additional relevant
9  conduct that was raised in his sentencing memo that was not
10 contemplated by our plea agreement and that we consider that
11 to be a breach.  The plea -- the sentencing -- his memorandum
12 talks about a third loan, Your Honor, with respect to one of
13 the victim's mother.
14        THE COURT:  The mother of --
15        MR. BOULWARE:  Right.
16        THE COURT:  -- C.R. that --
17        MR. BOULWARE:  Right.  Exactly, Your Honor.  That
18 is not in the plea facts.  And again, I'm not saying that
19 Mr. Schiess intentionally did that, but nonetheless, Your
20 Honor, it left me in a position as of Friday of not being
21 able to respond to or even gather facts with respect to that
22 particular loan or the circumstances of it first.
23        Secondly, Your Honor, I do not have enough
24 information and do not have information, Your Honor, with
25 respect to the 200 or some odd other mortgage defendants who

1  have received sentences in these type of cases.  Mr. Schiess
2  makes an argument, which I can understand, Your Honor, to say
3  that if there's parity then Ms. Hilton must receive a
4  sentence that is a custodial sentence based upon other
5  sentences.  Your Honor, I would like the names of those
6  defendants to be able to make that determination.
7           My understanding actually, Your Honor, is that the
8  U.S. Attorney's office about nine or 10 months into these
9  cases shifted to recommending harsher sentences and so that
10 there is in fact a disparity that exists.
11          Now I would not have raised that argument but for
12 the fact that Mr. Schiess is raising this issue about parity
13 with respect to other defendants in mortgage fraud cases.
14          Needless to say, Your Honor, those were arguments
15 that, again, were not raised by me in my sentencing
16 memorandum.  I didn't -- I did not, Your Honor, I raised
17 anything other than personal arguments but I did not go into
18 the offense conduct because my understanding was we were
19 bound by the facts in the plea agreement.  And so they -- Mr.
20 Schiess has raised -- and again, I don't even question him
21 for raising it because I understand he has --
22          THE COURT:  What about the presentence report in
23 the offense conduct section?  Refresh my recollection, does
24 it talk about -- and without the names of these victims it's
25 hard to tell, but C.R. I believe is the --

```
 1              MR. BOULWARE:  Right.
 2              THE COURT:  -- person we're talking about.
 3              MR. BOULWARE:  The mother's loan is not mentioned
 4   in that.
 5              THE COURT:  The mother's loan is not mentioned and
 6   it's not cited as relevant conduct then in the presentence
 7   report.
 8              MR. BOULWARE:  That's correct, Your Honor.
 9              THE COURT:  All right.  All right.
10              MR. BOULWARE:  So all I'm asking for at this point
11   in time, Your Honor, as the -- as a remedy for this issue --
12   and whether the Court makes a determination of breach or not,
13   I may not need to do that at this point.
14              THE COURT:  Well, but on your separate request
15   relating to all cases, I saw the reference to, you know,
16   there are many cases that fall different ways and that's --
17   intuitively I know that's true.  It's not presented as some
18   kind of grid telling me what departures have been.  Some
19   cases they're departures when there's a 5K for cooperation,
20   but it's no different than any other sentencing.  I'm not --
21              MR. BOULWARE:  Your Honor --
22              THE COURT:  -- going to order the government to go
23   back and try and produce --
24              MR. BOULWARE:  All I'm asking for, Your Honor, is
25   just the names of the -- of the defendants.
```

```
 1              THE COURT:  Of which defendants?
 2              MR. BOULWARE:  Of the defendants -- they have a
 3  list as I understand it of all the defendants who had
 4  mortgage fraud cases.  I'll pull the cases.  I'll pull the
 5  sentences.  I will do all the work.  All I want are the
 6  names.
 7              THE COURT:  I don't know, I'm trying one right now
 8  for six weeks and the predecessor case was 13 weeks before
 9  Judge Hunt.  So there's a -- you know, I know there's an
10  awful lot of cases, but.
11              All right.  Well -- so how long are you seeking
12  in --
13              MR. BOULWARE:  Your Honor, I'm just asking for
14  three weeks in part because my client isn't -- she doesn't
15  live here so I need some time --
16              THE COURT:  Lives in Texas.
17              MR. BOULWARE:  That's right.
18              THE COURT:  All right.  Mr. Schiess.
19              MR. SCHIESS:  Your Honor, since -- with all due
20  respect since Mr. Boulware's allegations go to my
21  professionalism and credibility I would like to respond
22  briefly to that.  I'm --
23              MR. BOULWARE:  Your Honor --
24              MR. SCHIESS:  Please?
25              MR. BOULWARE:  I'm sorry.  I just -- I just want
```

```
 1  to --
 2              THE COURT:  No, let Mr. Schiess finish.
 3              MR. BOULWARE:  I just want to say that I wasn't
 4  making allegations with respect to professionalism.
 5              THE COURT:  All right.  All right, let Mr. Schiess
 6  finish.  Go ahead.
 7              MR. SCHIESS:  The essence of his argument is that
 8  I've raised matters for relevant conduct that are not
 9  contemplated in the plea agreement.
10              THE COURT:  Right.
11              MR. SCHIESS:  I direct the Court's attention to
12  the plea agreement, paragraphs of page 7, paragraph E that
13  says:
14          "The Court may consider any counts dismissed under
15       this plea agreement and all other relevant conduct
16       whether charged or uncharged in determining the
17       applicable Sentencing Guideline range as whether to
18       depart from that range."
19              Mr. Boulware's sentencing memorandum is seeking a
20  departure under 3553, which he has the right to do by the
21  plea agreement and we have the right to oppose it.  And in
22  my judgment the appropriate way to oppose his request for a
23  12-month home confinement, which he bases upon a request for
24  the Court to balance her life with her conduct.  And her
25  activity here is for me to point out to the Court that her
```

1  conduct is not limited to those matters charged but the
2  relevant conduct the Court should know about so the Court
3  can make an intelligent decision and the plea agreement
4  authorizes me to do that.  So I can appreciate that Mr.
5  Boulware has made that argument but it's not supported by the
6  plea agreement and I'm within my professional responsibility
7  and trying to --
8              THE COURT:  All right.  I agree that you are and
9  that it's appropriate to raise this.  Does the raising of
10 this justify a continuance, a short continuance to allow
11 counsel to look into the very factors that you cite in terms
12 of relevant conduct?
13             MR. SCHIESS:  You know, I -- if he would like to do
14 that I have no objection to it because I think that at the
15 end of the day his client needs to walk away from this Court
16 feeling that she was treated fairly by the Court and the
17 government.  And if it takes additional time for Mr. Boulware
18 to make his argument, he makes good arguments.  If it takes
19 that for her to walk away feeling that the system treated her
20 fairly then I have no objection.
21             THE COURT:  And what about the request to produce
22 some list?  I'm not sure what --
23             MR. SCHIESS:  What he wants is the names of the
24 people who we prosecuted for mortgage fraud since 2009, 2010.
25 I'm capable of giving him the names of those people.  Some of

1  them though are -- their sentences are sealed and I've been
2  trying very diligently to get the courts to unseal those
3  because there's no need for them to remain.  But we still
4  have a handful.  I'd be more than happy to send him a list of
5  names and he can do --
6           THE COURT:  All right.
7           MR. SCHIESS:  -- do whatever work he wants with it.
8           THE COURT:  All right.
9           MR. SCHIESS:  And if there's any issues about
10 whether it's 200 -- there have been more than 200 but because
11 it's sealed and things of that nature, I'll work it out with
12 Mr. Boulware.  I'll --
13          THE COURT:  Well, if they're -- yeah, if there's
14 something that is sealed because it's still ongoing then
15 that's one -- that's one --
16          MR. SCHIESS:  Any issues I have with matters that I
17 haven't thought of to raise with you regarding that list, I'll
18 work it out with him.
19          THE COURT:  All right.
20          MR. SCHIESS:  And if we have a problem I'll come
21 back to the Court.
22          THE COURT:  All right.  So you propose three weeks
23 to allow you to explore these areas and that doesn't seem
24 unreasonable.
25          Donna, how do we look -- I think we will have some

```
 1  time.  Now this mortgage fraud trial, interestingly that I'm
 2  in, is estimated to take six weeks but I think it's moving a
 3  little bit faster.  Donna, the week -- not the week of April
 4  1, where I'm sitting with the Eleventh Circuit, and not the
 5  following week where I know we're still in the Mark trial,
 6  but the week after we start to have sometime where we could
 7  put the matter in.  Why don't you take a look at that and see
 8  maybe later in that week.  What week are we in, the 16$^{th}$,
 9  14$^{th}$?
10           (Off-record colloquy between Court and Clerk)
11            THE COURT:  What -- do you have a preference?
12            MR. SCHIESS:  The 18$^{th}$ would work better for me.
13            THE COURT:  18$^{th}$?
14            MR. SCHIESS:  That's a Thursday.
15            THE COURT:  Thursday?  Mr. Boulware?
16            MR. BOULWARE:  I'm just pulling it up right now,
17  Your Honor.
18            THE COURT:  Okay.
19            MR. BOULWARE:  At what time on the 18$^{th}$?
20            THE COURT:  Well, in the morning, 9:00, 9:30?  9:30,
21  we're at 9:30 now.  What about 9:30?
22            MR. BOULWARE:  That's fine with me, Your Honor, on
23  the 18$^{th}$ of April?
24            THE COURT:  18$^{th}$ at 9:30.  We'll continue the matter
25  to the 18$^{th}$ at 9:30.
```

```
 1            Now if anything is to be supplemented, make sure
 2   you file your supplements on either side at least a week
 3   prior to the sentencing so I'll have a chance to --
 4            MR. BOULWARE:  Absolutely, Your Honor.
 5            THE COURT:  -- consider them and you all
 6   reciprocally will have a chance to look at them.
 7            MR. BOULWARE:  Absolutely, Your Honor.
 8            THE COURT:  So it's a little longer than you had
 9   requested, it's more like a month.  But that gives you three
10   weeks to do the analysis and then get something filed if
11   you're going to supplement regarding -- C.R. what's C.R.'s
12   name?
13            MR. SCHIESS:  Oh, Cathy Rogers [phonetic].
14            THE COURT:  Rogers?  And her mother's name?
15            MR. SCHIESS:  Jean Martucci [phonetic].
16            THE COURT:  Jean?
17            MR. SCHIESS:  I think it's Martucci.
18            THE COURT:  Martucci.  And are there any other
19   defendants being prosecuted in connection with this
20   particular case because many of these have multiple
21   defendants.
22            MR. SCHIESS:  No, Your Honor.
23            THE COURT:  Okay.  All right.
24            MR. BOULWARE:  Not that I'm aware of, Your Honor.
25            THE COURT:  Okay.  All right.  All right, anything
```

1  else then?
2          MR. BOULWARE:  Your Honor, one thing I just want to
3  be clear on, although I think I've made it clear, is that I
4  was not in anyway making any type of professional allegation
5  with respect to Mr. Schiess.
6          THE COURT:  Well, I didn't take it that you -- that
7  you were but it is obvious -- obviously something that's
8  always of concern.  There's -- you know, this case presents a
9  lot of difficulties in another way in your client has not
10 been terribly forthcoming with a lot of information about
11 herself and it's noted in the presentence report.  So it kind
12 of handicaps me knowing some things about her situation,
13 economically and family-wise, and the like.  That's her
14 business in terms of what she chooses to share with her
15 family in terms of supporting your argument for some kind of
16 consideration.
17         The letters I received, and there's many letters,
18 are always "To whom it may concern," so I never know what to
19 make of "To whom it may concern," letters.  The context in
20 which they're being offered as well.  That doesn't detract
21 from the fact that there's more sides to a person than just
22 the fact that they're being prosecuted criminally.  The
23 presence of Mr. O'Reilly signifies that.  This is serious,
24 serious, serious criminal conduct and I don't know what the
25 study of all of the cases will show.  I only know the cases I

1  have and there are cases where variances has been granted or
2  departures on motions of the government for cooperation but
3  there are a lot of people going to prison for their conduct
4  and by their conduct they've earned the right to be there.
5  And so I don't want to leave, you know, you all with an
6  impression that I don't consider this to be something worthy
7  of serious consideration for the sentence that's proposed
8  under the guidelines.  But give me your analysis and I'll
9  look forward to the hearings -- or the additional information
10 you provide and -- but I do think the situation as to the
11 mother of Ms. Richards is relevant conduct, it appears, based
12 on what's in the sentencing memorandum and it is under the
13 provision of the plea agreement contemplated -- or referenced
14 by Mr. Schiess appropriate to raise that.  I don't whether
15 the Department of Probation needs any information or
16 supplement, Ms. Morgan?
17         PROBATION OFFICER:  Your Honor, I believe we were
18 given an interview with Ms. Martucci, but we did not include
19 it because I did not have any additional financial
20 information as far as loss and I know it was not contemplated
21 in the plea agreement.  I could certainly go back and revise
22 the report and include the interview that Ms. Martucci did
23 have with the FBI.
24         THE COURT:  Might be a good idea to do that.  Might
25 be a good idea to do that.  All right?  Shoot for three weeks

1  to get that done if you could --

2

3          PROBATION OFFICER:  Yes, Your Honor.

4          THE COURT:  -- so that I'll have that in advance?

5          PROBATION OFFICER:  Yes.

6          THE COURT:  Okay.  All right.

7          MR. BOULWARE:  Your Honor, if I could just clarify.

8  You're not asking the Probation Department to recalculate the

9  guidelines are you in this context in terms of inclusion of

10 that information?

11         THE COURT:  No, I'm not.  But I think if we're

12 going to have arguments about the relevant conduct if

13 probation has -- is privy to something it should be in the

14 presentence report.

15         MR. BOULWARE:  I just wanted to clarify that, Your

16 Honor, because obviously there's a new guideline calculation

17 out there, there'd be different issues that would be raised

18 as a result of that, that's all.

19         THE COURT:  Well, yeah.  Cause I think as was noted

20 in Mr. Schiess' memorandum, had it been included in the

21 calculations it would have kicked her sentencing range up

22 about another six months and that wasn't what I was

23 contemplating.  All right.

24         MR. SCHIESS:  And we're not.  We're certainly not

25 asking for that.

```
 1            THE COURT:  No, no.  I understand.  Yeah.
 2            MR. SCHIESS:  Just so the record -- I'm only --
 3  raise that issue for purposes of countering the 3553.
 4            THE COURT:  Of course.  No, I understand.
 5            MR. SCHIESS:  Thank you.
 6            THE COURT:  Yeah.  Okay.
 7            MR. BOULWARE:  Thank you, Your Honor.
 8            THE COURT:  All right.  Thank you all.
 9              PROCEEDINGS CONCLUDED AT 9:44:21 A.M.
10                          * * * * *
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATION

I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

**NW TRANSCRIPTS, LLC**
**NEVADA DIVISION**
**P.O. BOX 890**
**NAMPA, IDAHO 83653-0890**
**(208) 989-3455**
**gayle@nwtranscripts.com**

/s/ Gayle Martin-Lutz
FEDERALLY CERTIFIED MANAGER/OWNER

Kay McCrea                                                      05/20/13
TRANSCRIBER                                                     DATE